UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

REBECCA DOWLING,

               Plaintiff,

       V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

             Defendant.

─────────────────────────────────────

**REPORT AND
RECOMMENDATION**

12-CV-1181
(LEK/VEB)

# I. INTRODUCTION

In September of 2009, Plaintiff Rebecca Dowling applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since June of 2009 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Iaconis Law Firm, Christopher D. Thorpe, Esq., of counsel, commenced this action on July 23, 2012, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On June 26, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for benefits on September 28, 2009, alleging disability beginning on June 16, 2009. (T at 211-12, 213-15).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on December 6, 2010, in Syracuse, New York, before ALJ John P. Ramos. (T at 49). Plaintiff appeared with her attorney and testified. (T at 56-101). A follow-up hearing was held on April 19, 2011. (T at 103). Plaintiff appeared with her attorney. (T at 103). Testimony was received from a vocational expert. (T at 107-115).

On June 10, 2011, ALJ Ramos issued a decision denying Plaintiff's applications for benefits. (T at 7-27). The ALJ's decision became the Commissioner's final decision on May 29, 2012, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, through counsel, timely commenced this action on July 23, 2012. (Docket No. 1). The Commissioner interposed an Answer on December 10, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on January 31, 2013. (Docket No. 11). The Commissioner filed a Brief in opposition on April 17, 2013. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this case be remanded for calculation of benefits.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 16, 2009. and met the insured status requirements of the Social Security Act through December 31, 2013. (T at 12).  The ALJ found that Plaintiff's scoliosis, degenerative disc disease of the lumbar spine, depressive disorder, anxiety disorder, alcohol abuse in remission, and morbid obesity were "severe" impairments. (T at 12-15). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 15-16).

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR § 404.1567 (b) and 416.967 (b), with some exertional and non-exertional limitations. (T at 16-21). The ALJ determined that Plaintiff was capable of performing her past relevant work as an assembly line worker. (T at 21). As such, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Act, from June 16, 2009 (the alleged onset date) through June 10, 2011 (the date of the ALJ's decision). (T at 22). As noted above, the ALJ's decision became the Commissioner's final decision on May 29, 2012, when the Appeals Council denied Plaintiff's request for review.

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers two (2) principal arguments in support of this position. First, she argues that the ALJ's RFC determination is not supported by substantial evidence. Second, Plaintiff challenges the ALJ's credibility assessment. Both arguments will be reviewed in turn.

### a.    RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a

claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the RFC to perform light work, except that she was limited to lifting 20 pounds occasionally; frequently reaching, handling, fingering, and pushing/pulling with either upper extremity; sitting for 2 hours at a time, for a total of 4 hours in an 8-hour workday; standing for up to 2 hours in at a time, for a total of 3 hours in an 8-hour workday; walking for up to 1 hour at a time for a total of 2 hours in an 8-hour work day; and frequently operating foot controls with either foot. The ALJ found that Plaintiff should not work at unprotected heights and could only occasionally be exposed to dust, odors, pulmonary irritants, extremes of hot or cold, and vibrations. Plaintiff should never climb ladders or scaffolds, but could occasionally balance, stoop, kneel, crawl, crouch, and climb stairs and ramps. (T at 16).

The ALJ determined that Plaintiff could understand, execute, and remember simple instructions and work-like procedures. The ALJ found that Plaintiff can maintain attention, concentration, and pace for a normal work day and week and relate adequately to supervisors and co-workers, adjust to changes in a routine work setting, and use judgment to make simple work-related decisions. (T at 16).

Plaintiff argues that the ALJ should have afforded greater weight to the opinion of Kathleen Fitzgerald, a treating nurse practitioner. In March of 2011, Ms. Fitzgerald reported that Plaintiff had severe scoliosis of the back and was limited to occasionally lifting

less than 10 pounds, but never more than that; sitting for 20-30 minutes at one time and standing for 15-20 minutes at a time. (T at 614-15). She opined that Plaintiff could not sit, stand, or walk for more than 1 hour in an 8-hour workday and would need a job that permitted shifting positions between sitting, standing or walking ever 10-15 minutes during the day. (T at 616). Ms. Fitzgerald concluded that Plaintiff could never climb, balance, kneel, crouch, crawl, stoop, or bend/twist at the waist. (T at 617).

The ALJ afforded little weight to Ms. Fitzgerald's opinion. (T at 19-20). This aspect of the ALJ's decision was supported by substantial evidence. Ms. Fitzgerald is not considered a "treating source" under the Social Security Regulations and her opinion is not entitled to any special weight. A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502. There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Nurse practitioners are not included within those categories. Nurse practitioners are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. § 416.913 (d)(1). The Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995).

Dr. Roberto Rivera, a consultative examiner, examined Plaintiff in December of 2010 and assessed no limitations as to sitting or standing. (T at 599). He found mild to moderate limitations with regard to walking distances; moderate limitations with respect to lifting,

carrying, pushing, and pulling. (T at 599). The ALJ gave this assessment significant weight. (T at 18). An ALJ is entitled to rely upon the opinions of State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Plaintiff also reported vigorous physical activities, including painting her house, swimming, traveling to visit her mother in Maine, and caring for her young daughter. (T at 565).

With regard to her mental RFC, Plaintiff points to an opinion provided by Dr. Betsy McNerney, her treating psychiatrist, in October of 2010. Dr. McNerney assigned a Global Assessment Functioning ("GAF")[4] score of 59 (T at 546), indicating a moderate level of impairment. See Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed.2000) (listing scores from 51 through 60 as indicating "moderate symptoms (*e.g.* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, no friends, conflicts with peers or co-workers)"); see also Kohler v. Astrue, 546 F.3d 260, 262 n.1 (2d Cir. 2008).

Dr. McNerney opined that Plaintiff was seriously limited, but not precluded, for remembering work-like procedures; maintaining regular attendance and being punctual within customary (usually strict) tolerances; sustaining an ordinary routine without special

---

[4]The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004).

supervision; working in coordination with or proximity to others without being unduly distracted; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (T at 548). She found that Plaintiff was not materially limited with regard to understanding, remembering, or carrying out very short and simple instructions. However, Dr. McNearney assessed that Plaintiff was unable to meet competitive standards with respect to: completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in a routine work setting; and dealing with normal work stress. (T at 548). She also assessed moderate limitations as to activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (T at 550).

The ALJ discounted Dr. McNearney's assessment, finding it inconsistent with the treatment notes and other evidence of record. (T at 18). The ALJ's conclusion is not supported by substantial evidence. Rather, the medical record demonstrates persuasively that Plaintiff cannot handle normal work stress.

As a treating provider, Dr. McNearney's opinion was presumptively entitled to controlling weight. Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d

Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, an ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Dr. McNerney treated Plaintiff on at least a monthly basis for more than a year. (T at 378, 546). Although Dr. McNerney's treatment notes contain some positive reports during late 2010 (e.g. that Plaintiff was volunteering at a library, was "not depressed," and was experiencing good sleep, motivation, and energy)(T at 569, 574), this does not necessarily imply that Plaintiff could handle the stress demands of competitive, remunerative work.

"Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work."

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Stadler v. Barnhart. 464 F. Supp.2d 183, 189, 464 F. Supp.2d 183 (W.D.N.Y. 2006)(citing SSR 85-15; Welch v. Chater, 923 F. Supp. 17, 21 (W.D.N.Y.1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments")). Plaintiff's apparent ability to manage her depression while performing part-time volunteer work does not necessarily imply an ability to handle the significant demands of normal work stress.

The ALJ believed the positive treatment notes contradicted the treating psychiatrist's assessment of Plaintiff's mental health limitations. (T at 18). However, if the ALJ felt there was an incongruity between the treatment notes and Dr. McNerney's opinion, he should have re-contacted the treating psychiatrist. See 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

The ALJ gave "significant weight" to the opinion of Dr. Dennis Noia (a consultative examiner), who opined that Plaintiff could understand and follow simple instructions and directions; perform simple and some complex tasks with supervision and independently; and maintain attention and concentration for tasks. (T at 17, 375).

However, Dr. Noia also noted Plaintiff's "history of difficulty dealing with stress" and concluded that the results of his examination were consistent with Plaintiff's allegations. (T at 375). The ALJ did not make a specific finding regarding Plaintiff's ability to handle stress or reconcile his RFC determination with Dr. Noia's notation about Plaintiff's history of difficulty with stress. Dr. Noia certainly did not affirmatively assert that Plaintiff could deal with normal work stress. His reference to her history of difficulties and the statement that

the examination was consistent with Plaintiff's allegations suggests that he found some limitation as to stress, which is supportive of the treating psychiatrist's opinion. In addition, Ms. Fitzgerald, the treating nurse practitioner, assessed a marked limitation with respect to the ability to deal with work stress (T at 622), which provides yet still more support for Dr. McNeary's opinion.

The ALJ also afforded "significant weight" to the opinion of a non-examining State Agency review consultant. (T at 17). In March of 2010, Dr. R. Altmansberger opined that Plaintiff could understand, execute, and remember simple instructions and work-like procedures; maintain attention, concentration, and pace for a normal work day and work week; and adequately adjust to changes in a routine work setting. (T at 486). This opinion should have been afforded limited weight, as it was not based on an examination and, more importantly, was based on an incomplete record insofar as it was rendered before Dr. McNearny provided her assessment in October 2010. See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); see also McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009). Moreover, "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the treating physician's assessment. Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998).

In light of the foregoing, this Court finds that the ALJ's consideration of Plaintiff's ability to handle normal work stress and, in particular, his assessment of the opinion provided by Plaintiff's treating psychiatrist, are not supported by substantial evidence. In

13

fact, the record persuasively indicates that Plaintiff was precluded from adequately dealing with the stress of competitive, remunerative employment during the time period in question.

### b. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See, e.g., Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows:

She suffers from depression and weight gain associated with her depressive symptoms. (T at 70). She has difficulty dealing with change and has severe panic attacks when faced with stress. (T at 70). Her panic attacks occur approximately four or five times

a month and may last up to four hours. (T at 71). Medication improved her condition in recent months. (T at 72-73). She experiences daily back pain. (T at 73-74). Lifting aggravates the pain. (T at 75). Her back pain makes it difficult for Plaintiff to care for her seven-year-old daughter. (T at 89). She spends her days sewing, reading, doing light cleaning, and doing crafts. (T at 93). At the time of the hearing, Plaintiff was scheduled for a hearing aid fitting due to a partial hearing loss. (T at 98-99).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effect of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. (T at 21).

The ALJ's credibility determination was flawed. First, while a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." Gehm v. Astrue, No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); see also Patterson v. Astrue, No. 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013)("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination.").

Second, Plaintiff's work history is good (T at 223-26) and her credibility should have been afforded enhanced weight on that basis. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when

claiming an inability to work because of a disability.").

Third, Plaintiff's allegations of disabling difficulties dealing with stress are supported by her treating psychiatrist (T at 568), treating nurse practitioner (T at 622), and the psychiatric consultative examiner (T at 375), all of whom recognized Plaintiff's history of stress-related problems.

Lastly, the ALJ placed undue emphasis on Plaintiff's ability to perform basic activities of daily living. (T at 20-21). Under the circumstances and given the medical opinions of record, it was error for the ALJ to infer an ability to handle the stress demands of competitive, remunerative employment on a sustained basis from the ability to perform very basic activities of daily living. See Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(citations omitted). It is well-settled that "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act."); Lecler v. Barnhart, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002)("[T]he mere fact that [a Plaintiff] is mobile and able to engage in some light tasks at [her] home does not alone establish that [s]he is able to engage in

substantial gainful activity.")(quoting <u>Gold v. Sec'y of Health, Ed. & Welfare</u>, 463 F.2d 38, 41 n. 6 (2d Cir. 1972)).

The ALJ's decision to discount Plaintiff's credibility was not supported by substantial evidence.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" <u>Butts v. Barnhart</u>, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision...." <u>Butts v. Barnhart</u>, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting <u>Rosa v. Callahan</u>, 168 F.3d 72, 83 (2d Cir.1999)); <u>see also</u> <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

In the present case, this Court finds persuasive proof of disability.  As discussed in detail above, Plaintiff's treating psychiatrist (T at 568), treating nurse practitioner (T at 622),

18

and the psychiatric consultative examiner (T at 375), all recognized Plaintiff's history of stress-related problems.  The treating providers opined that Plaintiff could not manage the demands of work-related stress.  Although more recent reports in the medical record indicated some progress in the management of Plaintiff's symptoms, the medical opinions and evidence demonstrated that Plaintiff's psychiatric impairments materially limited her ability to respond to the stress demands of basic work activity.

Thus, substantial evidence exists in the record to conclusively indicate that Plaintiff was disabled within the definition of the Social Security Act during the relevant time period. In contrast, the evidence cited by the ALJ as support for his finding of non-disability is suspect for the reasons stated above and is contradicted by the substantial weight of the medical evidence

Accordingly, this Court finds the proof of disability to be persuasive and concludes that a remand for further evidentiary proceedings would serve no purpose.  As such, this Court recommends a remand for calculation of benefits.

## IV. CONCLUSION

This Court recommends that the Plaintiff be GRANTED judgment on the pleadings, that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: October 16, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.

1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988); <u>see</u> <u>also</u> 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.


Victor E. Bianchini
United States Magistrate Judge